Number 18-2932. We'll hear first from Mr. Mullins. Good morning, and may it please the Court. My name is Brian Mullins. I represent the appellant, Steven Adams, in this appeal. We've raised two issues on appeal. One is whether there was probable cause to issue a search warrant for Mr. Adams. The other is whether a prior conviction for conspiring to engage in a methamphetamine offense qualified properly as a controlled substance offense to increase his base offense level. Unless there are questions on the search warrant issue, we're going to focus on the sentencing guideline issue. I guess I'd put it this way on the search warrant. You and Mr. Walters have had several cases, a good lawyerly debate, trying to either cling to or distinguish Korth, McKittuck, and Olson as cases that are pretty closely on point and that come out on opposite sides of the line. And I guess my question is, under Leon, how is the police officer here supposed to have known that he should have second-guessed the judge who issued the search warrant, finding that this was enough? Well, Korth and McKittuck are consistent with our position that there was not probable cause to issue the search warrant. Olson has found that there was probable cause. We think the facts of Olson are distinguishable from the facts here. Exactly. You've made those arguments in your briefs about whether this was sufficient for that a judge looked at this and said, this is good enough. If it's at least reasonably debatable, isn't that good enough for good-faith reliance under Leon? Well, we think the facts from Olson are sufficiently distinguishable because the informant in Olson provided pretty extensive, incriminating information about himself, and that was really what separated Olson over the top in the probable cause analysis, whereas we do not believe the informant in this case gave incriminating information to that extent. Okay. Thank you. With respect to the sentencing guideline issue, our position is that although conspiring to engage in a methamphetamine conspiracy does qualify as a controlled substance offense under Application Note 1 to Section 4B1.2 of the sentencing guidelines, that application note is inconsistent with the text of the guidelines and therefore not entitled to deference under the Supreme Court's holding in Stinson. That position is supported by the D.C. Circuit in United States v. Winstead. Why isn't it just an interpretation as opposed to an expansion of the guidelines? Because the text does not refer to conspiring or any other inchoate offense, so it is expanding upon offenses that were included in the text, which were substantive offenses, by adding inchoate offenses, which the text of the guideline does not make any mention of. So we're actually not applying 4B here, are we? We're applying 2K2.1, right? Correct, but 2K2.1 defers to 4B. And the application note. And the application note. And an application note. Right, but is there anything inconsistent between 2K2.1 text and 2K2.1 application note? Well, 2K2.1 application note refers to the 4B1.2 application note and text. If the 4B1.2 application note is inconsistent with the text of 4B1.2, I don't see how the 2K2.1 application note can then incorporate offenses that were included by the 4B1.2 application note on its own. Why not? Because that in itself is an application note, so it would run into the same problems with respect to... It's not inconsistent. Consistent. I was going to say, we want to cover both of those. I've got to say, it's a fascinating little textual debate here. Why on earth should this distinction matter to a district judge under advisory guidelines? Well, as the Sixth Circuit commented in the Havis case, the guidelines are advisory, but they are still, I believe the term was the lodestar of federal sentencing, and they are the starting point. In this case, the starting point was 70 to 87 months because of the enhancement from base level 14 to base level 20 and then a number of other enhancements. If he had not received that enhancement, his guidelines would have been 37 to 46 months, and I find it unreasonable to think that he would have ultimately received an 84-month sentence where the advisory guidelines were 37 to 46 months. Because of a choice to charge a conspiracy in an earlier case rather than an actual distribution? Correct, and the quality of evidence presumably did not rise to the level of a substantive offense. We see plenty of cases here where the government chooses to charge people for conspiracy and will just take one conspiracy charge rather than a whole bunch of individual distribution charges. Why should that make any difference in the ultimate exercise of discretion under 3553A? By the way, if we were to agree with you in remand, would the district judge be entitled to consider the advice the Sentencing Commission has offered in its pending amendment? Yes, I think it would. So 4B1.2? Yes, and I think the district court could vary upward, possibly without prejudging, but it might be reasonable to vary upward because of the nature of the prior conviction and finding that his prior criminal history does not accurately reflect his actual criminal history. All of those are, I think, certainly relevant considerations, but that's not really the issue that we're presenting. We're presenting a pretty textual argument strictly based on whether the note is consistent with the guidelines. But you want to talk about 4B1.2 instead of 2K2.1. Well, only because that's what the Sentencing Commission told us to do. Did Judge Shadid raise explicitly on the record this question I'm asking about why this should matter? Well, the government has raised this issue. The government did raise it in a footnote in its sentencing memorandum, that 2K2.1. No, no, no. I mean about who cares about the tension between the advisory note in 4B1.2 and the text of the guideline itself? Not really in the context of the objection to the pre-sentence report. It wasn't really discussed. It may have been, I think, his prior record was discussed when he went over the 3553 factors. He did not indicate that he would impose the same sentence even if he was wrong about the guideline construction, did he? No, I don't recall that. I will reserve the rest of my time for rebuttal. Okay. Thank you, Mr. Mullins. Mr. Walters for the government. Good morning, Your Honors. May it please the Court. Greg Walters on behalf of the United States. Judge St. Eve, if I could first address the question you just asked of my friend before he left. The judge did indicate that he would likely vary upward, but he would not go as far as to say I would impose the same sentence. In fact, we asked him below if he didn't rule in our favor, would you still impose the same sentence, and he didn't quite bite the way we would have liked for harmless error analysis. Worth a try. It always is, Your Honor, on these rather esoteric guideline issues. Briefly addressing the search warrant question, Judge Hamilton, you asked why, as my friend and I got into a debate on what case is more analogous between Korth, Miatek, and Olson, why should not at a minimum of good faith exception apply? And it should. Police officers are not legal tacticians. And to sit there and where Mr. Mullins and I can't agree, and perhaps three judges couldn't agree, which is the more analogous case, to ask a police officer in the field who is a canine handler that made a traffic stop and goes diligently to an independent judge for a probable cause determination, this is exactly why we have the Leon good faith exception. There is nothing here to deter when reasonable minds would disagree on which case is more analogous from the Seventh Circuit. And, in fact, although I respect and understand the standard, the reality of a police officer, not a task force agent that works with federal law enforcement, but a police officer to know what the Seventh Circuit standard is is somewhat unrealistic and raises federalism concerns when we're dealing with this police officer just diligently seeking a warrant. So, ultimately, we do believe there is more than an established probable cause, but if not, the good faith exception applies. And so we come to the gravamen of this appeal, which is the application 01 to section 4B1.2. Without waiving waiver, I'll move from that to the main point that you were asking about, Judge Hamilton, is that the focus here is the guideline 2K2.1 and the undefined term controlled substance offense used in that guideline. That term in that particular guideline, unlike 4B1.2, does not have an explicit definition. And so the Sentencing Commission, in interpreting its own guideline, incorporated by reference the definition of 4B1.2 as well as application 01. We do not believe, as we argued in our brief, that the success of our argument rises or falls on whether application 01 to 4B1.2 is an appropriate interpretation. Instead, it rises or falls on whether the combination of that definition, 4B1.2, with the application note is a reasonable interpretation of the undefined term controlled substance offense as used in 2K2.1. And I don't think, respectfully, that a reasonable mind could differ, even without deference, to the Sentencing Commission. That the term controlled substance offense, if not defined, would certainly include a conspiracy to manufacture methamphetamine. And so, although a lot of ink was spilled below an argument on the application 01 in relation to 4B1.2, I think the quickest and proper way to affirmance of the District Court is looking solely at that contained guideline, 2K2.1. We ask ourselves, is the undefined term controlled substance offense reasonably interpreted by the Sentencing Commission or not? And we believe that it is. That would leave us, if we were to agree with the D.C. Circuit, with the same language having different meanings under different guidelines, but maybe that's what we're stuck with, right? I don't think... Well, I think the D.C. Circuit's wrong, but it would leave... And the Commission is acting to fix it. That was my point. They're acting to fix it. And so... And potentially the Sixth Circuit as well, since they're going to hear it en banc. That's right. They just granted en banc on April 18th. So... Sorry, in which way did their panel come out? I forgot. Well, the panel affirmed, based on prior circuit precedent, that the majority was critical of the United States v. Evans decision by the Sixth Circuit. The dissent said Evans didn't address the issue. We should be writing on a clean slate. And go with Winstead. And go with Winstead. Okay. But all three of them were disagreeing with that application note in context of 4B1.2, which, by the way, explicitly states it's the definition for the career offender provision. It's just with respect to 2K2.1, we just have the sentencing commission take an expedient means of defining an undefined term in an application note. What happens... Oh, sorry. The application notes are notes from the commission that don't go through any review publication process and comment, or don't go to Congress. What happens if the Supreme Court, in the Kaiser case that's before it, and we're waiting for a decision, what happens if the court reverses our and says you shouldn't give the same amount of deference? Does that impact your analysis? It would impact my analysis, but not the outcome. And if I quickly could make one correction, though, it's factually that although Congress approves the guidelines, I will say that the commission, as part of its publication process in the Federal Register, not only submits the guidelines, but the commentary themselves in public comment, at least with respect to this particular application note. The 2K1 or the 4B? Well, the 4B1.1, or excuse me, 4B1.2, when the guidelines were initially passed in 1987, there was an application note that dealt with controlled substance offense, including conspiracies in Kuwait offenses. That was sent out everywhere. And then in 1989, they amended the 4B1.2 to redefine crime of violence, moved away from the 16A definition, Title 18, and just put a self-contained definition. And they again amended the application note stating that those two types of offenses include in Kuwait offenses. And then there is a Federal Register site. I don't have it in my brief. I'll follow up in a Rule 28J letter. What about 2K2.1, that application? I don't have an answer to that, Your Honor. I would be happy to follow up with a Rule 28J to answer that question. I can guess that in preparing for this argument, I've wondered what member of Congress would have said, I'm okay with 4B1.2 in the text, but I really don't like this application note. And if I could vote on it, I'd reject it. I don't see that, but that's just me. But to get to your question, the reason I say that if our and Seminole Rock were to be reversed, causing probably much consternation among administrative agencies, I still think what we would do in this case is then the court would be left. We don't give deference. So we look at the term controlled substance offense in 2K2.1. We look at it as an issue of first impression on a clean slate. And I would submit that this court, in interpreting the term controlled substance offense, could reasonably conclude that that not only includes substantive offenses, but conspiracies, attempts, and aiding and abetting. I think that would be not only a reasonable construction, it would be the best construction of that generic term. And so while the commission, if our and Seminole Rock were overruled, would not be given deference, Stinson-type deference of its binding, I think the court could still take guidance from the commission. But it would ultimately give no deference and come up with its own independent determination. And we believe that the commission got it right and that this court would reach that conclusion if it were to address that issue of statutory construction under plenary review. Unless there are further questions from the court, we would ask that you affirm the judgment of the district court. Okay. Thank you, Mr. Wolters. Mr. Mullen's rebuttal. The government assumes expediency was the reason for the commission to refer to application note 4B1.2 and the guideline in its controlled substance definition in 2K2.1. But I think possibly a more reasonable interpretation is that the commission intended to some uniformity in the guidelines for what qualifies as a controlled substance offense and what qualifies as a crime of violence. I believe it refers to 4B1.2 and at least the immigration guidelines that 4B1.2 for guideline purposes is really the definitional guideline for controlled substance offenses and crimes of violence. So I think by the commission referring to that guideline and its application note, it shows the commission's intent to establish uniformity for what qualifies as controlled substance offenses. Just to get at the policy issue that I believe the court alluded to somewhat, I think the policy issue was addressed both by the D.C. Circuit in Winstead and by the Sixth Circuit in Havis. The D.C. Circuit focused what I would call a rule of lenity approach that when a guideline is ambiguous, that interpretation should be given to the defendant's side, and that's really kind of a due process argument. I think that is how the use of the tool of statutory construction that we've discussed at some length should be interpreted, which is just really kind of a tool of using the rule of lenity. And then the Havis court discussed at some length the separation of powers issues that are implicated by the sentencing commission establishing offenses that qualify as controlled substance offenses through its comment period rather than through the actual guideline process. Thank you to Mr. Mones and to Mr. Walters. The case will be taken under advisement.